UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY WAYNE BRYANT, | Case No. CV 16-8406 JC |
| Plaintiff, | |
| v. | MEMORANDUM OPINION |
| NANCY A. BERRYHILL,[1] Acting Commissioner of Social Security, | |
| Defendant. | |

## I.    SUMMARY

On November 10, 2016, Anthony Wayne Bryant ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits. The parties have consented to proceed before the undersigned United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; November 21, 2016 Case Management Order ¶ 5.

---

[1]Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is hereby substituted for Carolyn W. Colvin as the defendant in this action.

Based on the record as a whole and the applicable law, the decision of the Commissioner is AFFIRMED. The findings of the Administrative Law Judge ("ALJ") are supported by substantial evidence and are free from material error.

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On October 9, 2013, plaintiff filed an application for Disability Insurance Benefits alleging disability beginning on December 12, 2012, due to degenerative joint disease, degenerative disc disease, and testicular pain. (Administrative Record ("AR") 31, 139, 171-72). The ALJ examined the medical record and heard testimony from plaintiff (who was represented by counsel) and a vocational expert on May 12, 2015. (AR 44-67).

On June 30, 2015, the ALJ determined that plaintiff was not disabled through the date of the decision. (AR 31-39). Specifically, the ALJ found: (1) plaintiff suffered from the following severe impairments: degenerative disc disease, arthritic changes to the left acromioclavicular (AC) joint, status post bilateral inguinal hernia repairs, and history of prostate cancer (AR 33); (2) plaintiff's impairments, considered singly or in combination, did not meet or medically equal a listed impairment (AR 33-34); (3) plaintiff retained the residual functional capacity to perform medium work (20 C.F.R. § 404.1567(c)) with additional limitations[2] (AR 34); (4) plaintiff could perform past relevant work as a truck driver (AR 38-39); and (5) plaintiff's statements regarding the intensity, persistence, and limiting effects of subjective symptoms were not entirely credible (AR 35).

On September 16, 2016, the Appeals Council denied plaintiff's application for review. (AR 1).

---

[2]The ALJ determined that plaintiff could: (i) frequently climb stairs and ramps; (ii) occasionally climb ladders and scaffolds; (iii) frequently balance, stoop, kneel, crouch, and crawl; and (iv) occasionally reach overhead with his non-dominant left arm. (AR 34).

## III. APPLICABLE LEGAL STANDARDS

### A. Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted). The impairment must render the claimant incapable of performing the work the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is required to use the following five-step sequential evaluation process:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

(2) Is the claimant's alleged impairment sufficiently severe to limit the claimant's ability to work? If not, the claimant is not disabled. If so, proceed to step three.

(3) Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.

(4) Does the claimant possess the residual functional capacity to perform claimant's past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

(5) Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work

experience, allow the claimant to adjust to other work that

exists in significant numbers in the national economy?  If so,

the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citations omitted); see also 20 C.F.R. § 404.1520(a)(4) (2012) (explaining five-step sequential evaluation process).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted).

**B.     Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).  To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).

While an ALJ's decision need not discuss every piece of evidence or be drafted with "ideal clarity," at a minimum it must explain the ALJ's reasoning with sufficient specificity and clarity to "allow[] for meaningful review." Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (citations and internal

4

quotation marks omitted); <u>Hiler v. Astrue</u>, 687 F.3d 1208, 1212 (9th Cir. 2012) (citation and quotation marks omitted).

An ALJ's decision to deny benefits must be upheld if the evidence could reasonably support either affirming or reversing the decision. <u>Robbins</u>, 466 F.3d at 882 (citing <u>Flaten</u>, 44 F.3d at 1457); <u>see generally</u> <u>Rounds v. Commissioner of Social Security Administration</u>, 807 F.3d 996, 1002 (9th Cir. 2015) ("Overall, the standard of review is 'highly deferential.'") (citation omitted). Even when an ALJ's decision contains error, it must be affirmed if the error was harmless. <u>Treichler v. Commissioner of Social Security Administration</u>, 775 F.3d 1090, 1099 (9th Cir. 2014).

## IV. DISCUSSION

### A. The ALJ Properly Evaluated Plaintiff's Subjective Symptoms

Plaintiff contends that a remand or reversal is warranted because the ALJ "failed to articulate legally sufficient reasons for rejecting [plaintiff's] testimony[.]" (Plaintiff's Motion at 5-11). The Court disagrees.

#### 1. Pertinent Law

When determining disability, an ALJ is required to consider a claimant's impairment-related pain and other subjective symptoms at each step of the sequential evaluation process. 20 C.F.R. § 404.1529(a) & (d). Accordingly, when a claimant presents "objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms [the claimant] alleged," the ALJ is required to determine the extent to which the claimant's statements regarding the intensity, persistence, and limiting effects of his or her symptoms ("subjective statements" or "subjective complaints") are consistent with the record evidence as a whole and, consequently, whether any of the individual's symptom-related functional limitations and restrictions are likely to reduce the claimant's capacity to perform work-related activities. 20 C.F.R. § 404.1529(a), (c)(4); Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029, at *4-*9; SSR

96-7p, 1996 WL 374186, at \*1-\*5.[3]  When an individual's subjective statements are inconsistent with other evidence in the record, an ALJ may give less weight to such statements and, in turn, find that the individual's symptoms are less likely to reduce the claimant's capacity to perform work-related activities.  See SSR 16-3p, 2016 WL 1119029, at \*7-\*8; SSR 96-7p, 1996 WL 374186, at \*1-\*3.  In such cases, when there is no affirmative finding of malingering, an ALJ may "reject" or give less weight to the individual's subjective statements "by providing specific, clear, and convincing reasons for doing so."  Brown-Hunter, 806 F.3d at 488-89.[4]  If an ALJ's evaluation of a claimant's statements is reasonable and is supported by substantial evidence, it is not the court's role to second-guess it.  See Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

---

[3]Social Security Rulings reflect the Social Security Administration's ("SSA") official interpretation of pertinent statutes, regulations, and policies. 20 C.F.R. § 402.35(b)(1).  Although they "do not carry the 'force of law,'" Social Security Rulings "are binding on all components of the . . . Administration[,]" and are entitled to deference if they are "consistent with the Social Security Act and regulations." 20 C.F.R. § 402.35(b)(1); Bray v. Commissioner of Social Security Administration, 554 F.3d 1219, 1224 (9th Cir. 2009) (citations and quotation marks omitted); see also Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984) (discussing weight and function of Social Security rulings).  Effective March 28, 2016, the SSA issued SSR 16-3p which superseded SSR 96-7p and, in part, eliminated use of the term "credibility" from SSA "sub-regulatory policy[]" in order to "clarify that subjective symptom evaluation is not an examination of an individual's [overall character or truthfulness] . . . [and] more closely follow [SSA] regulatory language regarding symptom evaluation." See SSR 16-3p, 2016 WL 1119029, at \*1-\*2, \*10; see also 2016 WL 1237954, \*1 (correcting SSR 16-3p effective date to read March 28, 2016).  SSR 16-3p became effective after the ALJ issued the decision in the instant case but before the Appeals Council denied review.  Nonetheless, the possible applicability of SSR 16-3p need not be resolved here since the ALJ's evaluation of plaintiff's subjective complaints in this case passes muster whether SSR 16-3p or its predecessor, SSR 96-7p, governs.

[4]It appears to the Court, based upon its research of the origins of the requirement that there be "specific, clear and convincing" reasons to reject or give less weight to an individual's subjective statements absent an affirmative finding of malingering, that such standard of proof remains applicable irrespective of whether SSR 96-7p or SSR 16-3p governs.  See Burrell v. Colvin, 775 F.3d 1133, 1137 (9th Cir. 2014) (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989), Gallant v. Heckler, 753 F.2d 1450, 1455 (9th Cir. 1984), Johnson v. Shalala, 60 F.3d 1428, 1433 (9th Cir. 1995), and Molina, 674 F.3d at 1112).

## 2.    Analysis

First, the ALJ properly gave less weight to plaintiff's subjective complaints based on plaintiff's unexplained failure to seek a level or frequency of medical treatment that was consistent with the alleged severity of plaintiff's pain. See Molina, 674 F.3d at 1113 (ALJ may properly consider "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment" when evaluating claimant's subjective complaints) (citations and internal quotation marks omitted); SSR 16-3p, 2016 WL 1119029, at *7-*8 (ALJ may give less weight to subjective statements where "the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms. . . ."); SSR 96-7p, 1996 WL 374186, *7 (A "[claimant's] statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure.").

For example, as the ALJ noted, despite his complaints of severe pain, plaintiff apparently did not take any pain medication for significant periods of time. Urology treatment records from mid-2014 reflect that plaintiff had been prescribed pain medication prior to and for a short while after plaintiff's prostate cancer surgery on July 11, 2014. (AR 347, 357, 367-75, 500-627). Urology records from July 22, 2014 document that plaintiff had complained about severe stomach pain, but also indicate that plaintiff was "doing well" while making no specific reference to any medication being prescribed. (AR 361-68). Treatment notes from the Martin Luther King Jr. Medical Center reflect that during a November 3, 2014 orthopaedic clinic visit, plaintiff reported that his pain was

///

///

7

being treated by "NSAID's" (non-steroidal anti-inflammatory drugs) and a muscle relaxer, Robaxim[5] (which may have been prescribed earlier that year). (AR 295-98). During that visit plaintiff was prescribed Ultran[6] for pain. (AR 295). A January 9, 2014 treatment note from the same orthopaedic clinic states that plaintiff "decline[d] meds." (AR 299). A September 2, 2014 urgent care clinic progress note shows plaintiff was prescribed Norco[7] for pain (AR 352, 355), but, as the ALJ noted, the same record reflects that plaintiff asserted "I don't take any medications." (AR 36) (citing Exhibit 5F at 34 [AR 355]). As the ALJ also noted, a December 16, 2014 ambulatory clinic outpatient note reflects that plaintiff had "[n]o active medications" at the time (AR 36) (citing Exhibit 5F at 75 [AR 396]), and other records reflect that at one point plaintiff "deferred any treatment to his left shoulder" including trigger point injections that plaintiff's workers' compensation doctor had "recommended," and "deferred any pain management consultation due to improvement of his lower back symptoms." (AR 36) (citing Ex. 1F at 31-32 [AR 237-38]).

Medical records also document several occasions when plaintiff apparently sought treatment for severe pain from either his urologist or a hospital emergency department, but – apart from medication administered during the particular visit itself – it appears that plaintiff was prescribed and/or continued on only his

_____

[5]Robaxim is the brand name version of the prescription drug Methocarbamol, which "is used to treat muscle spasms/pain." See Methocarbamol, WebMD web site, available at http://www.webmd.com/drugs/2/drug-8677/methocarbamol-oral/details.

[6]Ultran is the brand name version of the prescription drug Tramadol, which "is used to help relieve moderate to moderately severe pain . . . [like] opioid (narcotic) analgesics." Tramadol, WebMD web site, available at http://www.webmd.com/drugs/2/drug-4398-5239/tramadol-oral/tramadol-oral/details.

[7]Norco is a combination (narcotic and acetaminophen) prescription medication "used to relieve moderate to severe pain." Norco, WebMD web site, available at http://www.webmd.com/drugs/2/drug-63/norco-oral/details.

medication for erectile dysfunction (*i.e.*, Cialis or Viagra). (See, e.g., AR 357-60 [8/19/14 Urology Outpatient Clinic Report]; AR 396-98 [12/16/14 Harbor-UCLA Medical Center Urology Outpatient Notes]; AR 412-14 [2/1/15 Harbor-UCLA Neurosurgery Consultation Notes]; AR 447-53 [4/8/15 Harbor-UCLA Medical Center Emergency Department treatment records]; AR 464-80 [4/15/15 Harbor-UCLA Medical Center Emergency Department treatment records]; AR 634-47 [4/30/15-5/1/15 Harbor-UCLA Medical Center Emergency Department treatment records]). Similarly, on May 1, 2015, during a follow up visit, plaintiff apparently reported "[t]aking Norco for pain control," but no medications were administered during that visit, and plaintiff's "medication(s)" were identified only to include "Viagra." (AR 652, 655, 656).

In light of the foregoing, substantial evidence supports the ALJ's conclusion that "[t]he contrast between the [plaintiff's] greater interest in improving sexual function versus alleviating pain suggests that limitations resulting from his impairments other than erectile dysfunction did not trouble him as much as alleged." (AR 36).

Second, the ALJ properly gave less weight to plaintiff's subjective complaints based on evidence that plaintiff engaged in daily activities that were inconsistent with the alleged severity of plaintiff's pain and/or limitations. See Burrell v. Colvin, 775 F.3d 1133, 1137 (9th Cir. 2014) ("Inconsistencies between a claimant's testimony and the claimant's reported activities provide a valid reason for an adverse credibility determination.") (citation omitted). For example, as the ALJ noted, contrary to plaintiff's hearing testimony that he had stopped driving a truck due to disabling pain and because he was unable to "hold the steering wheel," the record contains evidence that when he still had a license (and during the alleged period of disability) plaintiff was able to drive for 30 minutes at a time – which the ALJ reasonably interpreted as "indicat[ing] that the [plaintiff] was physically capable of holding his arms up to control a steering wheel, using his

legs to operate pedals, and turning his neck to view oncoming traffic." (AR 37, 49, 51-52, 179). The ALJ also reasonably inferred that "[plaintiff's] interests in increasing his sexual activity [was] not consistent with [plaintiff's] allegations of extreme limitations in his neck, back, arms, and legs." (AR 36).

As plaintiff correctly suggests (Plaintiff's Motion at 9), a claimant "does not need to be 'utterly incapacitated' in order to be disabled." Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) (citation omitted). Nonetheless, this does not mean that an ALJ must find that a claimant's daily activities demonstrate an ability to engage in full-time work (*i.e.*, eight hours a day, five days a week) in order to discount conflicting subjective symptom testimony. To the contrary, even where a claimant's activities suggest some difficulty in functioning, an ALJ may also give less weight to subjective complaints to the extent a claimant's actual level of activity appears inconsistent with the extent of functional limitation the claimant alleged. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (ALJ may consider daily activities to extent plaintiff's "level of activity [is] inconsistent with [the] . . . claimed limitations"); cf. Molina, 674 F.3d at 1113 ("Even where [claimant's] activities suggest some difficulty functioning, they may be grounds for [giving less weight to] the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.") (citations omitted). While plaintiff suggests that his level of daily activities was not inconsistent with his subjective complaints (Plaintiff's Motion at 9-10), this Court may not second guess the ALJ's reasonable determination to the contrary, even if the evidence could give rise to inferences more favorable to plaintiff. Thomas, 278 F.3d at 959 (citation omitted).

Finally, the ALJ properly gave less weight to plaintiff's subjective complaints due, in part, to the absence of supporting objective medical evidence. (See AR 35-36); see Burch, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the

ALJ can consider . . . ."); cf. SSR 16-3p, 2016 WL 1119029, at *5 ("[ALJ may] not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual."); SSR 96-7p, 1996 WL 374186, at *6 (same). To the extent plaintiff argues that the objective medical evidence actually supports his subjective complaints (Plaintiff's Motion at 7-8), the Court again declines to second guess the ALJ's reasonable determination to the contrary.

Accordingly, a remand or reversal is not warranted on this basis.

## B. The ALJ Properly Evaluated the Medical Opinion Evidence

Plaintiff contends that the ALJ improperly rejected the opinions expressed by Dr. Naeemah H. Ghaufur, plaintiff's treating physician, in an October 17, 2013 physical medical source statement – specifically, that plaintiff had significant functional limitations which effectively would prevent him from performing even sedentary work[8] ("Dr. Ghaufur's Opinions"). (Plaintiff's Motion at 11-16) (citing AR 244-46). A remand or reversal is not warranted on this basis because the ALJ properly rejected Dr. Ghaufur's Opinions for clear and convincing, specific and legitimate reasons supported by substantial evidence.

///

///

---

[8]Dr. Ghaufur diagnosed plaintiff with cervical radiculitis, "pain testicular," "degenerat cervica," and neuralgia/neuritis, and opined that plaintiff (i) could stand/walk for up to two hours and sit for four hours in an eight-hour day; (ii) needed to shift positions at will among sitting, standing, and walking, and was "unable to walk, stand, or sit for more than 20 minutes [at] a time"; (iii) could lift less than 10 pounds occasionally and 10 pounds rarely; (iv) could occasionally twist, rarely stoop (bend), and never crouch/squat, or climb ladders or stairs; (v) would frequently experience pain or other symptoms severe enough to interfere with the level of attention and concentration needed to perform even simple work tasks; (vi) was incapable of even "low stress" jobs; and (vii) would likely be absent from work about four days per month due to plaintiff's impairments or treatment. (AR 244-46).

### 1. Pertinent Law

In Social Security cases, the amount of weight given to medical opinions generally varies depending on the type of medical professional who provided the opinions, namely "treating physicians," "examining physicians," and "nonexamining physicians" (*e.g.*, "State agency medical or psychological consultant[s]"). 20 C.F.R. §§ 404.1527(c)(1)-(2) & (e), 404.1502, 404.1513(a); Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (citation and quotation marks omitted). A treating physician's opinion is generally given the most weight, and may be "controlling" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record[.]" 20 C.F.R. § 404.1527(c)(2); Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007) (citations and quotation marks omitted). In turn, an examining, but non-treating physician's opinion is entitled to less weight than a treating physician's, but more weight than a nonexamining physician's opinion. Garrison, 759 F.3d at 1012 (citation omitted).

A treating physician's opinion is not necessarily conclusive as to either a physical condition or the ultimate issue of disability. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted). An ALJ may reject the uncontroverted opinion of a treating physician by providing "clear and convincing reasons that are supported by substantial evidence" for doing so. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted). Where a treating physician's opinion is contradicted by another doctor's opinion, an ALJ may reject such opinion only "by providing specific and legitimate reasons that are supported by substantial evidence." Garrison, 759 F.3d at 1012 (citation and footnote omitted).

An ALJ may provide "substantial evidence" for rejecting a medical opinion by "setting out a detailed and thorough summary of the facts and conflicting

clinical evidence, stating his [or her] interpretation thereof, and making findings."
Id. (citing Reddick, 157 F.3d at 725) (quotation marks omitted). An ALJ must
provide more than mere "conclusions" or "broad and vague" reasons for rejecting
a treating or examining physician's opinion. Embrey v. Bowen, 849 F.2d 418, 421
(9th Cir. 1988); McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989) (citation
omitted). "[The ALJ] must set forth his [or her] own interpretations and explain
why they, rather than the [physician's], are correct." Embrey, 849 F.2d at 421-22.

## 2. Analysis

First, Dr. Ghafur provided her opinions in a check-the-box format. (AR
244-46). As the ALJ noted, Dr. Ghafur identified no objective evidence or
specific clinical findings apart from general "tenderness" in plaintiff's "cervical
spine" and "proximal part of right scrotum," and gave "no explanation as to how
tenderness to palpation on 2 discrete regions of the body result[ed] in the
[plaintiff's] inability to sustain a normal 8-hour workday or participate in a low-
stress job." (AR 38) (citing Exhibit 2F [AR 244-46]). The ALJ was entitled to
give less weight to Dr. Ghafur's Opinions on this basis alone. See, e.g., Crane v.
Shalala, 76 F.3d 251, 253 (9th Cir. 1996) ("ALJ [] permissibly rejected [medical
evaluations] because they were check-off reports that did not contain any
explanation of the bases of their conclusions."); De Guzman v. Astrue, 343 Fed.
Appx. 201, 209 (9th Cir. 2009) (ALJ "is free to reject 'check-off reports that d[o]
not contain any explanation of the bases of their conclusions.'") (citing id.); see
also Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001) ("[T]he
regulations give more weight to opinions that are explained than to those that are
not. . . .") (citation omitted); Ogin v. Colvin, 608 Fed. Appx. 519, 519-20 (9th Cir.
2015) (ALJ offered specific and legitimate reasons for discounting treating
physician's opinions that "were expressed as 'standardized, check-the-box
form[s]' [and] that provided no 'supporting reasoning or clinical findings.'")
(quoting Molina, 674 F.3d at 1111).

13

Second, the ALJ also properly gave less weight to Dr. Ghafur's Opinions because, as the ALJ noted (AR 38), they were not supported by the evidence of record, much less any treatment notes from the physician herself that might explain the basis for the extreme physical limitations she found for plaintiff. Cf., e.g., Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003) (ALJ properly rejected treating physician's opinion where "treatment notes provide[d] no basis for the functional restrictions [physician] opined should be imposed on [claimant]"); Thomas, 278 F.3d at 957 ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) ("When confronted with conflicting medical opinions, an ALJ need not accept a treating physician's opinion that is conclusory and brief and unsupported by clinical findings.").

Third, the ALJ also properly gave less weight to Dr. Ghafur's Opinions based on the relatively limited duration of treatment relationship with plaintiff and infrequency of examination. See 20 C.F.R. § 404.1527(c)(2)(i) ("Length of the treatment relationship and the frequency of examination" one factor considered when "deciding the weight [given] to any medical opinion[]"); see, e.g., Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1199 (9th Cir. 2004) ("The weight accorded a treating physician's opinion depends on the length of the treatment relationship, the frequency of visits, and the nature and extent of treatment received.") (citing id.).

Finally, the ALJ properly rejected Dr. Ghafur's Opinions in favor of the conflicting opinions of the state agency examining physician, Dr. Marvin Perer (AR 249-53), who essentially opined that plaintiff was able to perform work at the medium exertion level (i.e., "lift[] and carry[] 50 pounds occasionally and 25

///

///

14

pounds frequently" with no limitation on sitting, standing, and walking)[9] (AR 253), as well as the opinions of Dr. Philip A. Sobol, an examining orthopedic surgeon for plaintiff's workers' compensation claim, who noted, among other things, that "[plaintiff] is able to self-modify his duties at work so that he is able to complete his usual and customary duties" as an "interstate long distance semi-truck driver." (AR 237). The opinions of Drs. Perer and Sobol were supported by the physicians' independent examinations of plaintiff (AR 233-36 [Dr. Sobol]; AR 250-52 [Dr. Perer]), and thus, without more, constituted substantial evidence upon which the ALJ could properly rely to reject Dr. Ghafur's Opinions. See, e.g., Tonapetyan, 242 F.3d at 1149 (examining physician's opinion on its own constituted substantial evidence, because it rested on physician's independent examination of claimant) (citations omitted). To the extent plaintiff contends that the medical opinion evidence does not support rejection of Dr. Ghafur's Opinions (Plaintiff's Motion at 14-15), the Court will not second guess the ALJ's reasonable determination otherwise. See Robbins, 466 F.3d at 882 (citation omitted).

Accordingly, a remand or reversal is not warranted on this basis.

## C. The ALJ's Non-Disability Determination at Step Four Is Free of Material Error

Plaintiff contends that the ALJ erroneously determined that he could perform past relevant work as a truck driver essentially because (1) the requirements of such occupation exceed plaintiff's abilities, and thus the vocational expert's testimony that plaintiff could perform such job deviated from the Dictionary of Occupational Titles; and (2) the ALJ failed to make the requisite

---

[9]"Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c). "A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds. [S]itting may occur intermittently during the remaining time." SSR 83-10 at *6.

1    "specific findings" of fact.   (Plaintiff's Motion at 16-22).  A reversal or remand is
2    not warranted on either basis.

3                    **1.    Pertinent Law**

4          At step four, claimants have the burden to show that they are no longer able
5    to perform their past relevant work.  Pinto v. Massanari, 249 F.3d 840, 844 (9th
6    Cir. 2001) (citations omitted); 20 C.F.R. § 404.1520(e).  The Commissioner may
7    only deny benefits at step four if the claimant has the residual functional capacity
8    to perform either a particular past relevant job as "actually performed," or the
9    same kind of work as "generally" performed in the national economy.  Pinto, 249
10   F.3d at 844-45 (citing SSR 82-61); SSR 82-62 at *3.

11         When classifying a claimant's past relevant job as "actually" performed,
12   ALJs look to "a properly completed vocational report" and the claimant's
13   testimony.  Pinto, 249 F.3d at 845 (citing SSR 82-41, 82-61).  The best source for
14   information regarding how an occupation is "generally" performed is usually the
15   Dictionary of Occupational Titles ("DOT").[10]  Id. at 845-46 (citations omitted); see
16   also 20 C.F.R. § 404.1566(d)(1).  An ALJ may also obtain testimony from a
17   vocational expert regarding how an occupation is "generally" performed.  See
18   Pinto, 249 F.3d at 845-46 (citations omitted); see generally Bailey v. Astrue, 2010
19   WL 3369152, *5 (C.D. Cal. Aug. 24, 2010) ("vocational expert's testimony
20   constitutes substantial evidence to support [] ALJ's Step Four determination that
21   plaintiff can perform his past relevant work") (citations and footnote omitted); see
22   also Gutierrez v. Colvin, 844 F.3d 804, 807 (9th Cir. 2016) (noting, in context of

_____

24         [10]The DOT is the Social Security Administration's "'primary source of reliable job
25   information' regarding jobs that exist in the national economy."  Zavalin v. Colvin, 778 F.3d
     842, 845-46 (9th Cir. 2015) (citing Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990)); see
26   also 20 C.F.R. §§ 404.1566(d)(1), 404.1569.  Although "not comprehensive," the DOT describes
27   the general requirements for various occupations and raises a rebuttable presumption as to a
     particular job's classification.  Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995) (citations
28   omitted).

                                                    16

step five, "ALJ may rely on an impartial vocational expert to provide testimony about jobs [a claimant] can perform despite his or her limitations.").

Whenever a vocational expert's testimony "conflicts with, or seems to conflict with" the DOT requirements for a particular occupation, the ALJ must ask the vocational expert additional questions at the hearing in order to "obtain a reasonable explanation for any [such] conflict." Gutierrez, 844 F.3d at 807 (citation omitted); Massachi v. Astrue, 486 F.3d 1149, 1152-53 (9th Cir. 2007) (quoting SSR 00-4p); SSR 00-4p at *4 ("When vocational evidence provided by a [vocational expert]. . . is not consistent with information in the DOT, the [ALJ] must resolve [the] conflict before relying on the [vocational expert] . . . evidence to support a determination or decision that the individual is or is not disabled."); see also Zavalin, 778 F.3d at 846 ("When there is an apparent conflict between the vocational expert's testimony and the DOT – for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle – the ALJ is required to reconcile the inconsistency.") (citation omitted).  An ALJ may not rely on a vocational expert's opinions regarding job requirements unless the ALJ has adequately identified and resolved any such conflict.  Gutierrez, 844 F.3d at 807 (citing SSR 00-4p); see Bailey, 2010 WL 3369152, at *5.

Nonetheless, an ALJ must conduct an additional inquiry at the hearing only when a conflict between a vocational expert's testimony and the DOT is "obvious or apparent."  Gutierrez, 844 F.3d at 807-08.  Conflicts are generally "obvious or apparent" only when the vocational expert's testimony is at odds with requirements listed in the DOT that are "essential, integral, or expected" to the occupation at issue.  See Gutierrez, 844 F.3d at 808 ("[T]asks that aren't essential, integral, or expected parts of a job are less likely to qualify as apparent conflicts that the ALJ must ask about.").  Moreover, an ALJ's obligation to inquire further is less compelling where the particular job at issue "is a familiar one[.]"  Id. ("To

be sure, an ALJ must ask follow up questions of a vocational expert when the expert's testimony is either obviously or apparently contrary to the Dictionary, but the obligation doesn't extend to unlikely situations or circumstances.").

In addition, while claimants have the burden at step four to prove an inability to perform past relevant work, an ALJ is still required "to make specific findings on the record at each phase of the step four analysis [which] provide[] for meaningful judicial review." Pinto, 249 F.3d at 847 (citation and quotation marks omitted). Accordingly, an ALJ's determination at step four must contain the following specific findings of fact: (1) the claimant's residual functional capacity; (2) the physical and mental demands of the past relevant job/occupation; and (3) that the claimant's residual functional capacity would permit a return to his or her past job or occupation. Id. at 844-45; SSR 82-62 at *3-*4.

### 2.    Analysis

Here, plaintiff asserts that the ALJ's conclusion that plaintiff could perform past relevant work as a truck driver was erroneous essentially because (1) the requirements of such occupation exceed plaintiff's abilities, and thus the vocational expert's testimony that plaintiff could perform such job improperly deviated from the DOT; and (2) the ALJ failed to make the requisite "specific findings" of fact.   (Plaintiff's Motion at 16-22).  A reversal or remand is not warranted on either basis.

First, the record does not reflect an obvious or apparent conflict between the vocational expert's testimony and the DOT.  As plaintiff correctly notes, the DOT states that the position of truck driver requires frequent reaching.  See DOT § 905.663-014 [Truck Driver, Heavy].  Plaintiff argues that such requirement exceeds his abilities because, as the ALJ's residual functional capacity assessment reflects, plaintiff "[could] only occasionally reach overhead with the non-dominant left arm." (Plaintiff's Motion at 19-20) (citing AR 34).  Nonetheless, plaintiff has not identified any conflict between the vocational expert's opinion that plaintiff

could perform past relevant work as a truck driver despite such limitation and any requirement identified in the DOT that is "essential, integral, or expected" to that occupation. For example, none of the essential requirements described in the DOT for the truck driver occupation necessarily appear to involve overhead reaching at all.[11] In addition, the DOT lists several other tasks that do not appear to be an integral or expected part of truck driver positions generally,[12] and only one of which might obviously involve overhead reaching of some kind (*i.e.*, "May load and unload truck."). See DOT § 905.663-014.

Moreover, to the extent the position of truck driver arguably requires frequent overhead reaching, it appears that plaintiff would still be capable of performing that job since there is no evidence that plaintiff has any limitation in reaching with his dominant, *right* arm. (AR 34). The vocational expert basically confirmed as much when she testified that, despite plaintiff's *left* arm limitation, plaintiff could perform his past relevant work consistent with DOT requirements. (AR 64-65).

Plaintiff's conclusion that the requirements of the truck driver occupation exceeded his abilities appears erroneously premised on the unsupported

---

[11]The DOT lists the following primary tasks required for the occupation of "Truck Driver, Heavy": "Drives truck with capacity of more than 3 tons, to transport materials to and from specified destinations: Drives truck to destination, applying knowledge of commercial driving regulations and area roads. Prepares receipts for load picked up. Collects payment for goods delivered and for delivery charges." DOT § 905.663-014.

[12]The DOT describes the following additional duties of a Truck Driver:

*May* maintain truck log, according to state and federal regulations. *May* maintain telephone or radio contact with supervisor to receive delivery instructions. *May* load and unload truck. *May* inspect truck equipment and supplies, such as tires, lights, brakes, gas, oil, and water. *May* perform emergency roadside repairs, such as changing tires, installing light bulbs, tire chains, and spark plugs. *May* position blocks and tie rope around items to secure cargo during transit.

DOT § 905.663-014 (emphasis added).

19

assumption that the reaching required by such occupation necessarily involves the use of *both* arms. However, the DOT does not expressly contain such a requirement. Cf., e.g. Gutierrez, 844 F.3d at 809 n.2 (suggesting that there would be no "obvious or apparent" conflict between requirements of cashier job that involved overhead reaching and claimant's abilities where claimant was only restricted from reaching with one arm); Feibusch v. Astrue, 2008 WL 583554, *5 (D. Haw. Mar. 4, 2008) (citations omitted) ("[T]he use of two arms is not necessarily required for jobs that require reaching and handling."); Diehl v. Barnhart, 357 F. Supp. 2d 804, 822 (E.D. Pa. 2005) (person with limited use of one arm could perform jobs requiring frequent reaching, handling, and fingering, and therefore there was no conflict between DOT and vocational expert's testimony to that effect).

Moreover, since the DOT does not expressly state whether the truck driver job requires *bilateral* reaching, the ALJ appropriately obtained the testimony of a vocational expert to assist in the step four determination. See Fuller v. Astrue, 2009 WL 4980273, *3 (C.D. Cal. Dec. 15, 2009) (Where nature of particular action required in performance of job not specified in DOT, ALJ may properly rely on testimony from vocational expert to determine whether claimant can perform job in question despite claimant's limitations). The ALJ posed a hypothetical question to the vocational expert which included all of the limitations on plaintiff's left arm noted in the ALJ's residual functional capacity assessment. (AR 34, 63-64). In response, the vocational expert testified that a claimant with the stated limitations could still perform the truck driver job, at least as generally performed. (AR 63-64). The vocational expert's testimony constitutes substantial evidence supporting the ALJ's determination that plaintiff could perform such past relevant work as generally performed. See Gutierrez, 844 F.3d at 807. The Court will not second-guess the ALJ's reasonable interpretation of the evidence, even if the record could give rise to contrary inferences.

To the extent plaintiff suggests that the ALJ erred at step four because the record lacks substantial evidence to support the finding that plaintiff was able to perform his past relevant work as "actually performed" (Plaintiff's Motion at 20-21), plaintiff fails to demonstrate that a remand is warranted. Here, the ALJ's decision is reasonably interpreted as finding at step four that plaintiff was capable of performing his past relevant work as a truck driver as that occupation was *generally* performed. (AR 38-39). As discussed above, that determination is supported by substantial evidence. The ALJ was not also required to make findings regarding plaintiff's past relevant works as *actually* performed. See generally Pinto, 249 F.3d at 845 ("We have never required explicit findings at step four regarding a claimant's past relevant work both as generally performed *and* as actually performed. The vocational expert merely has to find that a claimant can or cannot continue his or her past relevant work as defined by the regulations [].") (citation omitted).

To the extent plaintiff also contends that the ALJ failed to make the requisite specific findings at step four, plaintiff's argument lacks merit. Here, in the decision, the ALJ specified plaintiff's residual functional capacity, and expressly found, based on consideration of the requirements of the past relevant work, and as informed by the vocational expert's hearing testimony, that plaintiff's residual functional capacity would not preclude plaintiff from returning to his past relevant work as a truck driver. (AR 39). Plaintiff has not persuasively identified any errors in the vocational expert's testimony, which, as discussed above, constitutes substantial evidence to support the ALJ's step four determination that plaintiff could perform his past relevant work.

Accordingly, a reversal or remand on this basis is not warranted.

///

///

///

1   **V.**     **CONCLUSION**

2        For the foregoing reasons, the decision of the Commissioner of Social

3 Security is affirmed.

4        LET JUDGMENT BE ENTERED ACCORDINGLY.

5 DATED: June 30, 2017

6                                  /s/

7                           Honorable Jacqueline Chooljian

8                           UNITED STATES MAGISTRATE JUDGE